UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:   ERIC S. GOLDEN,                                    No. 25-10646-j13

Debtor.

## MEMORANDUM OPINION

This matter came before the Court for a final evidentiary hearing held September 30,

2025, on the Motion for Relief from Stay (Doc. 14 – the "Stay Motion") filed by Kent Thomas,

Dolores Quijano Thomas, and Rachel M. Golden (together "Creditors").[1] Parties and counsel

appearing at the final hearing were noted on the record. Creditors argued that the Stay Motion

should be granted because this bankruptcy case was filed in bad faith and was part of a scheme

by Debtor to delay, hinder, or defraud Creditors. At the end of the final hearing, the Court fixed a

deadline for parties to submit optional, simultaneous post-closing briefs. The parties timely filed

post-closing briefs, and the Court took the matter under advisement. Having heard the parties'

arguments and considered the evidence and the parties' post-closing briefs and relevant caselaw,

the Court has determined that relief from the automatic stay should not be granted for cause

predicated on the Debtor's bad faith, and that the filing of the petition commencing this

bankruptcy case was not part of a scheme to delay, hinder, or defraud Creditors. The Court will

therefore deny Creditors' Stay Motion without prejudice.

## PROCEDURAL HISTORY

Debtor filed this case under Chapter 13 on May 27, 2025. On June 6, 2025, Creditors

filed the Stay Motion (Doc. 14) to allow a foreclosure to proceed on Debtor's residence. Debtor

---

[1] Rachel M. Golden is Debtor's mother. Dolores Quijano Thomas is Rachel M. Golden's niece, and Kent Thomas is Dolores Quijano Thomas's spouse. On December 30, 2024, Dolores Quijano and Kent Thomas were appointed permanent conservators of Rachel M. Golden, an incapacitated person, by the Superior Court of Arizona in Maricopa County, case number: PB 2-23-091333.

timely filed a response on June 27, 2025 (Doc. 27). Creditors filed a reply on July 18, 2025 (Doc. 30).

A preliminary hearing on the Stay Motion was held July 22, 2025. The Court issued a scheduling order for the final hearing (Doc. 31). An evidentiary hearing was held on September 30, 2025. The Court issued an order that fixed a deadline of October 21, 2025, for the parties to file optional post-closing briefs (Doc. 53). Debtor filed a closing brief on October 21, 2025 (Doc. 55). Creditors filed a closing brief on October 21, 2025 (Doc. 56) and a Notice of Errata re Post-Trial Brief and Stay Relief Motion on October 23, 2025 (Doc. 57). After briefing was complete, the Court took the matter under advisement

## FINDINGS OF FACT

The Court makes the following findings of fact pursuant to Fed. R. Civ. P. 52(a)(1), made applicable to contested matters in bankruptcy cases by Fed. R. Bankr. P. 9014 and Fed. R. Bankr. P. 7052. [2], [3]

The case before the Court is Debtor's fourth bankruptcy case, filed immediately after the hearing in which the Court denied Debtor's motion to set aside the discharge and final decree in his third bankruptcy case.

---

[2] Any facts set forth in the Procedural Background are incorporated herein by this reference and constitute findings of fact.

[3] Any additional findings of fact contained in the Discussion section of this Memorandum Opinion not expressly set forth in the Findings of Fact section are hereby incorporated by reference into the Findings of Fact section and adopted as the Court's findings of fact.

*First Bankruptcy Case*

Debtor filed a petition for relief under Chapter 7 in the District of New Jersey in 2001. The filing was prompted by debts that accumulated after Debtor sustained an injury and had a lengthy hospital stay and years of recovery. Debtor was granted a discharge in 2002.

*Second Bankruptcy Case*

In 2012, Debtor filed a Chapter 13 case in the District of New Mexico. Debtor filed this case because a mortgage company had wrongfully held funds paid by Debtor. The mortgage company was ordered to disgorge the funds, and Debtor successfully modified his mortgage. On March 1, 2018, after the completion of his Chapter 13 plan, Debtor was granted a discharge.

*New Jersey Judgment*

On January 3, 2023, the Superior Court of New Jersey Chancery Division – Probate Part Gloucester County, docket no. 21-73, entered judgment against Debtor and in favor of Rachel Golden, Debtor's mother, ordering Debtor to return to Rachel Golden a 2010 Honda vehicle, a Hibel painting, and all of Rachel Golden's jewelry, and to pay Rachel Golden a monetary judgment in the amount of $122,451. The judgment states:

> THIS MATTER having been presented to the Court by Kathie L. Renner, Esquire, court-appointed counsel for Rachel M. Golden, for an order granting Rachel M. Golden's Motion for Reimbursement of Misappropriated Funds, Return of Personal Property and Award of Attorneys' Fees (the "Motion"); and Eric Golden appearing pro se; and Kent and Dorothy Thomas, the Temporary Guardians, having been represented by Lynda Hinkle, Esquire, and the Court having considered the submissions on behalf of Rachel M. Golden and the arguments of the parties; and good cause having been shown,

> IT IS on this 3rd day of Jan (sic), 2023 hereby ORDERED, that the Motion shall be, and hereby is, GRANTED; and

> IT IS FURTHER ORDERED, that Eric S. Golden shall return the 2010 Honda vehicle, the Hibel painting and all jewelry of Rachel M. Golden, and

> IT IS FURTHER ORDERED, that Eric S. Golden pay the sum of $122,450.86 to Rachel M. Golden forthwith based on the following obligations:

- 3 -

(1) Funds that Eric S, Golden misappropriated from Rachel M. Golden's bank account for his own benefit in the amount of $67,487.07; and

(2) The balance of Rachel M. Golden's Bank of America credit card account ending in 3583 as of June 2022 utilized by Eric S. Golden for his own benefit in the amount of $26,435.06; and

(3) Attorneys' fees and costs in the amount of $15,291.29 incurred by Rachel M. Golden in this litigation comprised of (A) $6,982.50 for fees previously paid to Kathie L. Renner, Esquire on behalf of Rachel M. Golden and (2) $7,752.50 for fees plus costs of $556.29 incurred from December 9, 2021 through December 22, 2022, which fees and costs shall be awarded pursuant to this Order; and

(4) Attorneys' fees in the amount of $14,094.94 incurred by the Temporary Guardians, Kent and Dorothy Thomas, for the services of Lynda Hinkle, Esquire in connection with this litigation; and

IT IS FURTHER ORDERED, that a Judgment in the amount of $122,450.86 is hereby entered in favor of Rachel M. Golden against Eric S. Golden. Payments received by Rachel M. Golden or paid on her behalf to the Bank of America credit card from or by Eric S. Golden pursuant to the previous paragraphs of this Order shall be credited against said Judgment[.]

(all together the "New Jersey Judgment").

Debtor never turned over any property or made any payment to Rachel M. Golden as required by the New Jersey Judgment.

The New Jersey Judgment was a result of litigation in which, according to the judgment, Debtor participated and all parties appeared and argued the merits of the matter. It is unclear from the evidence before this Court whether the New Jersey Judgment was entered after an evidentiary hearing or a trial. The New Jersey Judgment disposed of all issues in the controversy. Debtor did not appeal the New Jersey Judgment or file a motion for relief from the New Jersey Judgment.

- 4 -

Debtor believed that an attorney he hired would file an appeal of the New Jersey Judgment;[4] however, no appeal was ever filed. New Jersey Judgment is no longer appealable because no appeal of the New Jersey Judgment was filed within 45 days of the court entering the New Jersey Judgment.[5]

*Creditors' First Foreclosure Action*

On April 18, 2023, in an action commenced by Creditors against Debtor in New Mexico state court (the "NM State Court Action"), the State Court issued a transcript of judgment for $127,450.86 which included the $122,450.86 New Jersey Judgment and an additional $5,000 of costs incurred in the NM State Court Action (the "New Mexico Judgment"). The transcript of judgment was recorded in Dona Ana County, New Mexico on May 22, 2023. Recording the transcript of judgment in Dona Ana County, New Mexico created a judgment lien against all of Debtor's real property located in the county, namely, his residence (the "Judgment Lien").

On July 25, 2023, Creditors filed a complaint in the NM State Court Action to foreclose the Judgment Lien against Debtor's residence. [6] Debtor alleged in his answer to Creditors' foreclosure complaint that the New Jersey Judgment was being challenged in New Jersey. On

---

[4] The New Jersey Judgment recites that the Debtor appeared pro se. It is not clear from the evidence before this Court whether Debtor retained counsel in the New Jersy action after entry of the judgment.
[5] N.J. R.A.R 2:4-1 ("[A]ppeals from final judgments of courts, final judgments or orders of judges sitting as statutory agents, and final judgments of the Division of Workers' Compensation shall be filed within 45 days of their entry.")
[6] The Court takes judicial notice of the Docket and all documents filed on the Docket of: Debtor's cases before the Bankruptcy Court for the District of New Mexico; Debtor's case before the Bankruptcy Court for the District of New Jersey; the NM State Court Action; and the New Jersey state court case resulting in the New Jersey Judgment. *See St. Louis Baptist Temple v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir.1979) ("[I]t has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) ("We take judicial notice of court records in the underlying proceedings.") (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). By taking judicial notice of documents, the Court is not admitting the documents in evidence for the truth of matters asserted in the documents.

October 25, 2023, Creditors filed a motion for judgment on the pleadings in the NM State Court Action. Debtor filed a response on November 8, 2023, and Creditors filed a reply on November 10, 2023. The State Court granted judgment on the pleadings on February 28, 2024, and permitted Creditors to foreclose the Judgment Lien against Debtor's residence. Creditors published notice of and scheduled the foreclosure sale of Debtor's residence for August 28, 2024.

On August 20, 2024, Debtor and Creditors entered into a stipulated settlement agreement (the "Settlement Agreement") filed in the NM State Court Action under which Creditors agreed to, and did, stop the foreclosure sale of Debtor's residence. Under the Settlement Agreement, the Debtor agreed to pay, and the Creditors agreed to accept, $1,000 per month, beginning on September 1, 2024, until the New Mexico Judgment was satisfied. The Settlement Agreement included the following terms: (1) a five-day grace period for payments without changing any of the due dates for payments; (2) if Debtor's payments were timely made and the New Mexico Judgment was satisfied, accrued interest, and Creditors' costs and fees incurred, would be forgiven; (3) as a remedy for breach, i.e. failure to make payments: (A) one missed payment would result in the capitalization of interest and fees accrued to that point, but if the payment were cured, capitalization of both interest subsequent to the cure date and additional fees incurred subsequent to the cure date would be suspended; (B) however, two missed payments would constitute a total breach with no opportunity to cure without complete satisfaction of the New Mexico Judgment. In the event of two missed payments, Creditors were allowed to immediately resume the foreclosure of the Judgment Lien with a new notice of sale in accordance with applicable procedure governing foreclosure sales after which a special master appointed in the NM State Court Action would sell the residence.

- 6 -

Debtor never made any of the payments to which he agreed in the Settlement Agreement. At the September 30, 2025, final hearing, Debtor testified that he intended to make payments when he entered into the Settlement Agreement, but his continuing medical conditions left him unable to work; he had used all of his paid time off and was on unpaid FMLA leave. Debtor testified that he had to pay his attorneys in the New Jersey, Arizona, and New Mexico cases,[7] and had other bills to pay, and he did not have sufficient funds to make the payment due under the Settlement Agreement. After Debtor failed to make the second payment due under the Settlement Agreement, Creditors resumed foreclosing on Debtor's residence. If Debtor was unable to make even the first payment under the Settlement Agreement due within two weeks after execution of the Settlement Agreement, which he had reason to know when he signed the Settlement Agreement, he should not have entered into it.

*Debtor's Third Bankruptcy Case*

On October 30, 2024, Debtor filed a voluntary petition for relief under Chapter 7, Case No. 24-11166-j7 (the "Third Case") which stayed the foreclosure against his residence. Creditors filed a motion for relief from stay in the Third Case on December 31, 2024. In his Statement of Financial Affairs filed in the Third Case, Debtor did not disclose he was holding any assets for his mother. Third Case, Doc. 1 at p. 42 of 46.

On February 14, 2025, Creditors initiated an adversary proceeding to determine dischargeability of the debt related to the New Jersey Judgment. The adversary proceeding is still pending before this Court.

---

[7] Debtor had legal expenses for the case that resulted in the New Jersey Judgment, the case in Arizona that resulted in Kent Thomas and Dolores Quijano Thomas being appointed conservators for Rachel M. Golden; Debtor's divorce action in New Mexico; and Debtor's two bankruptcy cases.

On January 21, 2025, Debtor filed a response to the Creditors' motion for relief from stay filed in the Third Case in which he indicated that if Creditors' New Jersey Judgment was found to be dischargeable in the adversary proceeding, Debtor intended to move to avoid the Judgment Lien as a judicial lien that impaired his homestead exemption. As the pendency of the adversary proceeding and the pending motion for relief from stay were not impediments to granting the debtor a discharge and closing the bankruptcy case, Debtor was administratively granted a Chapter 7 discharge, a final decree was entered, and, on April 7, 2025, the Third Case was closed.[8]

Debtor's counsel represented to the Court that, because a motion for relief from stay and the adversary proceeding were still pending, he did not believe the Debtor would be granted a discharge or that the Court would close the Third Case. Debtor's counsel represented that he was waiting for the adversary proceeding regarding the dischargeability of the New Jersey Judgment to be decided before filing a motion to avoid the judicial lien. If the motion to avoid the judicial lien were filed and litigated, Debtor would incur considerable expense. If the Judgment Lien were avoided but the New Jersey Judgment subsequently was found to be non-dischargeable in the adversary proceeding, Creditors could simply obtain a new judgment lien against Debtor's residence, and the money spent litigating the motion to avoid the judicial lien would be a waste of money even if Debtor prevailed. But if the debt was found dischargeable, the Debtor would then file a motion to avoid the judgment lien.

---

[8] The Court determined that the pendency of the adversary proceeding was not in impediment to granting the Debtor a discharge because, if Creditors prevailed in the adversary proceeding after the discharge was entered, the debt Debtor owed them would be excepted from the discharge. The Court determined further that the pendency of the stay motion relating to Debtor's residence was not an impediment to closing the Third Case because when the case was closed the residence would be abandoned from the bankruptcy estate and the stay would terminate by operation of law.

When the Third Case was closed, Creditors proceeded with the foreclosure of the Judgment Lien against Debtor's residence. The foreclosure sale of Debtor's residence was scheduled for May 28, 2025. On April 17, 2025, Debtor filed a motion to set aside the discharge and final decree in the Third Case. Debtor was attempting to revive the automatic stay to stop the foreclosure sale and to have time to file a motion to avoid the Judgment Lien on Debtor's residence. The Court held an evidentiary hearing on May 27, 2025, on the motion to set aside the discharge and final decree and denied the motion the same day.[9]

*Debtor's Fourth and Current Bankruptcy Case*

After the Court denied the motion to set aside the discharge and final decree in the Third Case, Debtor immediately thereafter, on May 27, 2025, filed this Chapter 13 case (the "Fourth Case") to stop the foreclosure sale and to preserve the Debtor's ability to file a motion to avoid the Judgment Lien under 11 U.S.C. § 522(f)[10] against his residence held by Creditors and another judicial lien held by Debtor's ex-spouse. On June 10, 2025, Debtor filed a Statement of Financial Affairs ("SOFA")in this case (Doc. 16). At the Debtor's § 341(a) meeting of creditors on July 16, 2025, it was discovered that Debtor had omitted from his SOFA several items he is holding for someone else, including paintings held in his possession that belonged to Rachel M. Golden. On August 28, 2025, Debtor filed an amended SOFA. In Part 9 of the amended SOFA (Doc. 39),

---

[9] Court found that the relief Debtor sought could not be granted by setting aside the discharge and the final decree in the Third Case. The bankruptcy estate, created when Debtor filed his voluntary petition for relief, ceased to exist once the Third Case was closed. Thus, even if Debtor's motion to set aside the discharge and final decree were construed as a motion to reopen the case and reinstate the automatic stay, there was no bankruptcy estate to be protected.

[10] Unless otherwise indicated, all statutory references are to Title 11 of the United States Code, 11 U.S.C. § 101 et seq., known as the United States Bankruptcy Code ("Code").

Debtor listed the omitted property he is holding for someone else and stated that the value of the property was unknown.[11]

Debtor testified at the final hearing on the Motion for Relief from Stay that he did not list these items in Part 9 of his SOFA[12] because he believed the New Jersey Judgment was not valid, and he believed it would be overturned. Debtor testified that he believed that if he listed the property in Part 9 and subsequently was forced to relinquish the property to his cousins, the property would never be given to his mother. He testified further that he was holding the property for his mother. Debtor filed an Amended SOFA on August 26, 2025 (Doc. 39). The Court finds that Debtor's testimony regarding his subjective belief and reasons for not listing the property in the original SOFA, although it did not relieve him of the obligation to disclose the property he was holding for his mother, is credible.

Debtor filed his First Amended Chapter 13 Plan (the "Plan" – Doc. 41) on August 26, 2025. In Part 8, the Plan includes a motion to avoid the Judgment Lien as impairing his homestead exemption to be heard at the confirmation hearing. But in Part 14, the Plan states that Debtor may need to modify the Plan once the Court determines 1) whether the New Jersey Judgment is dischargeable; and 2) whether the Judgment Lien may be avoided.

## DISCUSSION

---

[11] Debtor also has a coin collection in his possession. The coin collection is not listed in the New Jersey Judgment as property to be turned over, but Debtor considers the coin collection to be Rachel M. Golden's property while she is alive. Debtor disclosed his mother's coin collection in his amended SOFA (Doc. 39) as property he is holding that someone else owns.

[12] Part 9 of Official Form 107 – Statement of Financial Affairs for Individuals Filing for Bankruptcy requires that a petitioner "Identify Property You Hold or Control for Someone Else." There are check boxes, a yes or a no, as to whether the petitioner holds or controls property belonging to someone else. The name of the owner of the property, the location of the property, a description of the property, and the property's value are filled in below on the form.

- 10 -

In the Stay Motion, Creditors argue that stay relief should be granted under § 362(d)(1) for "cause" based on Debtor's alleged bad faith, and/or under § 362(d)(4), alleging that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors. To determine whether relief from the stay should be granted for cause based on bad faith, the Court first will consider whether bad faith can constitute cause for stay relief; second, if bad faith can constitute cause for stay relief, the Court will examine relevant factors; and third, the Court will determine whether, considering the totality of the circumstances, cause exists to grant stay relief.

1. Bad Faith as "Cause" for Stay Relief Under § 362(d)(1)

Section 362(d)(1) provides that a party in interest may obtain relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." A party seeking relief from the stay has burden of demonstrating "cause."[13] Section 362(d) gives no guidance regarding what constitutes "cause" to grant relief from the automatic stay, except that "cause" includes "the lack of adequate protection of an interest in property of such party in interest."[14]

Bad faith on the part of a debtor, including a debtor's filing of a bankruptcy case in bad faith,[15] can serve as a basis for relief from the automatic stay.[16] However, "[a]lthough bad faith

---

[13] *Sonnax Indus., Inc. v. Tri Component Products Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1285 (2d Cir.1990).

[14] § 362(d)(1); *Pursifull v. Eakin*, 814 F.2d 1501, 1506 (10th Cir. 1987) ("Because there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis." (quoting *In re Castlerock Properties,* 781 F.2d 159, 163 (9th Cir. 1986))).

[15] *Smith v. Shoma Homes at Nautica Single Family (In re Smith)*, No. 24-12183, 2025 WL 2827458, at *1 (11th Cir. Oct. 6, 2025) ("A finding that a bankruptcy petition was filed in bad faith is sufficient cause for relief from an automatic stay") (citing *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989)); *In re Arnold*, 806 F.2d 937, 939 (9th Cir.1986) ("The debtor's lack of good faith in filing a bankruptcy petition has often been used as cause for removing the automatic stay.")

[16] *Laguna Assocs. Ltd. P'ship v. Aetna Cas. & Surety Co. (In re Laguna Assocs. Ltd. P'ship)*, 30 F.3d 734, 737 (6th Cir. 1994) ("[A] lack of good faith constitutes 'cause' for lifting an automatic stay"), *as amended on denial of reh'g and reh'g en banc* (Sept. 9, 1994); *Carolin Corp. v. Miller*, 886 F.2d 693, 699 (4th Cir.1989) ("[Section] 362(d)(1)'s 'for cause' language authorizes the court to determine whether, with respect to the interests of a creditor seeking relief, a debtor has sought

can constitute 'cause' to lift the automatic stay under section 362(d) of the Bankruptcy Code, 'the concept of bad faith filing should be used sparingly to avoid denying bankruptcy relief to statutorily eligible debtors except in extraordinary circumstances.'"[17]

There is no definition in the Bankruptcy Code of what constitutes "good faith" or "bad faith" even though the concept of good faith (which necessarily implicates bad faith) appears in several places in the Bankruptcy Code. For example, § 1129(b)(3), § 1225(a)(3), and § 1325(a)(3) expressly provide, respectively, that every chapter 11, 12, and 13 plan be "proposed in good faith and not by any means forbidden by law." Further, the non-exhaustive list of grounds for finding "cause" to dismiss or convert a chapter 11 case under § 1112(b)(4) describes conduct that could support a finding of bad faith. Some courts have held that the filing of a bankruptcy case in bad faith is sufficient cause for relief from the automatic stay.[18]

In deciding whether a debtor has acted in bad faith, whether for purposes of stay relief or plan confirmation, courts consider the totality of the circumstances and examine various factors to guide the court's exercise of its discretion. The weight given each factor will necessarily vary with the facts and circumstances of each case,[19] and each enumerated factor may or may not be applicable, while other non-enumerated factors may be relevant.

---

the protection of the automatic stay in good faith."); *Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir.1986) (lack of good faith constitutes "cause" for lifting the stay to permit foreclosure); *In re JE Livestock, Inc.,* 375 B.R. 892, 897 (10th Cir. BAP 2007) ("Among the factors to be considered in determining whether the automatic stay should be modified for cause are the good or bad faith of the debtor and the injury to the movant if the stay is not modified." (citing *In re A Partners, LLC*, 334 B.R. 114, 127 (Bankr. E.D. Cal. 2006))).

[17] *In re Culligan Ltd.,* No. 20-12192 (JLG), 2023 WL 5942498, at *19 (Bankr. S.D.N.Y. Sept. 12, 2023) (quoting *In re 234-6 W. 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997)).

[18] *See* footnote 15, *supra.*

[19] *Flygare v. Boulden*, 709 F.2d 1344, 1348 (10th Cir. 1983)

- 12 -

In *Flygare v. Boulden*,[20] the Tenth Circuit examined various factors in considering whether debtors' chapter 13 plan was proposed in "good faith." In *In re Gier*,[21] the Tenth Circuit held that the "totality of the circumstances" must be considered when determining whether a Chapter 13 case has been filed in bad faith, and considered various factors in that context. The Eleventh Circuit, in *In re Smith*,[22] examined various factors in considering whether a Chapter 13 petition had been filed in good faith as a basis for determining whether to grant relief from the automatic stay for cause.

2. <u>Consideration of Factors Relevant to a Determination of Bad Faith as "Cause" for Relief from the Automatic Stay</u>

The Court will consider the relevant factors enumerated in *Flygare*, *Gier*, and *Smith*, as well as other factors relevant in the particular circumstances of this case, to determine whether "cause" exists to grant stay relief to permit Creditors to foreclose their Judgment Lien based on Debtor's alleged bad faith.

*The New Jersey Judgment*

The New Jersey Judgment entered in favor of Creditors and against Debtor adjudged that Debtor misappropriated funds from Rachel M. Golden, Debtor's mother, and made charges to her credit card for his own benefit. Creditors are Rachel M. Golden's guardians. The Court has not determined whether the New Jersey Judgment has issue preclusive effect. When considered alone, this factor weighs in favor of the Court granting relief from the stay for cause based on the Debtor's bad faith.

*The pending non-dischargeability adversary proceeding and motion to avoid the Judgment Lien*

---

[20] *Id.* at 1347-48.
[21] *In re Gier*, 986 F.2d 1326, 1328-29 (10th Cir. 1993).
[22] *In re Smith*, No. 24-12183, 2025 WL 2827458 (11th Cir. Oct. 6, 2025).

- 13 -

Creditors obtained the Judgment Lien against the Debtor's residence pre-petition in aid of collection of the New Mexico Judgment.[23] Creditors seek stay relief to foreclose the Judgment Lien. In adversary proceeding No. 25-1007-j (the "Adversary Proceeding"), Creditors ask the Court to determine that the judgment debt is non-dischargeable under §§ 523(a)(2), 523(a)(4), and/or 523(a)(6). The gravamen of the complaint in the Adversary Proceeding is that Debtor misappropriated funds from his mother. In his Plan, Debtor does not propose to pay the Creditors the amount of the New Jersey Judgment or the New Mexico Judgment but instead seeks to avoid the Judgment Lien under § 522(f).

If the Court grants relief from the stay, Creditors' foreclosure of the Judgment Lien will mean that Debtor will lose his home and be precluded from seeking to avoid the Judgment Lien under § 522(f) regardless of who prevails in the Adversary Proceeding. If the Court does not grant relief from the stay pending the outcome of the Adversary Proceeding and Creditors ultimately prevail in the Adversary Proceeding, the Court would then grant stay relief to permit Creditors' to foreclose the Judgment Lien unless Debtor has paid Creditors in full. Or, if Creditors prevail in the Adversary Proceeding and the Judgment Lien had already been avoided, the Court would then grant stay relief to permit Creditors' obtain and foreclose a new judgment lien against Debtor's residence unless Debtor has paid Creditors in full.

On the other hand, if the Court does not grant relief from the stay pending the outcome of the Adversary Proceeding and Debtor ultimately prevails in the Adversary Proceeding, Creditors' ability to foreclosure a judgment lien against the residence will depend on whether the Judgment Lien is avoidable under § 522(f).

---

[23] The New Mexico Judgment is the Creditors' domestication of the New Jersey Judgment in the NM State Court Action.

The Court will not opine whether the judgment debt is dischargeable or whether the New Jersey Judgment has issue preclusive effect prior to its ruling on those issues in the Adversary Proceeding.

These circumstances weigh in favor of not granting stay relief until a decision is made in the Adversary Proceeding. If Creditors prevail in the Adversary Proceeding, they may then foreclose a judgment lien (whether the existing Judgment Lien or, if the Judgment Lien is avoided, a new judgment lien) against Debtor's residence unless Debtor has paid the judgment in full. But if Debtor prevails in the Adversary Proceeding and the debt to Creditors is found to be dischargeable, Debtor will be able to keep his home if the Judgment Lien is avoidable under § 522(f).

*The frequency with which the debtor has sought relief under the Bankruptcy Code, Debtor's motive for filing his fourth bankruptcy case, and the timing of that filing*

This bankruptcy case is Debtor's fourth bankruptcy case. Debtor filed a chapter 7 case in 2001 in which he was granted a discharge in 2002. He filed a chapter 13 case in 2012 in which he successfully completed his chapter 13 plan and was granted a chapter 13 discharge in 2018. Debtor filed the Third Case, a chapter 7 case, on October 20, 2024, following entry of the New Jersey Judgment on January 3, 2023. Debtor was granted a discharge in the Third Case and the case was closed on April 7, 2025. Creditors filed the Adversary Proceeding in connection with the Third Case. None of these bankruptcy cases were found to be an abuse of the bankruptcy system or were dismissed for any other reason. These circumstances, by themselves, do not indicate any bad faith in filing the Fourth Case.

Debtor filed his fourth and current chapter 13 bankruptcy case on May 27, 2025, less than two months after the Third Case was closed and within a year after commencement of that case. In the Third Case, Debtor's counsel was waiting for the outcome of the Adversary Proceeding to

- 15 -

decide whether to file a motion to avoid the Judgment Lien. Debtor had filed a response to the Creditor's motion for relief from stay filed in the Third Case in which Debtor stated that if Creditors' New Jersey Judgment was found to be dischargeable in the Adversary Proceeding, Debtor intended to move to avoid the Judgment Lien. Such a motion would not be filed if the debt were found to be non-dischargeable because even if the Judgment Lien were avoided Creditors could simply obtain a new judgement lien. Given these circumstances, Debtor's counsel did not anticipate that the Court might grant Debtor a chapter 7 discharge and close the Third Case prior to resolution of the Adversary Proceeding. Debtor filed the Fourth Case immediately after the Court denied Debtor's motion to set aside the discharge and final decree in the Third Case so that Debtor would have an opportunity to file and prosecute a motion to avoid the Judicial Lien in the Fourth Case.

Given this reason for the filing the Fourth Case, the filing of the Fourth Case does not weigh in favor of the Court granting relief from the stay for cause based on the Debtor's bad faith.

*Whether Debtor's pre-petition conduct
with regard to Creditors has been improper*

After Creditors domesticated the New Jersey Judgment in New Mexico, Creditors published notice of and scheduled a foreclosure sale of Debtor's residence for August 28, 2024 to foreclose their interest in the Judgment Lien. About a week before the sale was scheduled to take place, Debtor and Creditors entered into the Settlement Agreement, which stopped the foreclosure sale. Under the settlement, Debtor agreed to pay, and the Creditors agreed to accept, $1,000 per month, beginning on September 1, 2024, until the judgment was satisfied. Debtor never made a single payment under the Settlement Agreement. Debtor filed the Third Case after

- 16 -

Creditors resumed foreclosing the Judgment Lien that attached to his residence as a result of his default under the Settlement Agreement.

Debtor gave several reasons for failing to make a single payment under the Settlement Agreement as set forth in the Court's findings of fact. Notwithstanding Debtor's explanation, the Court finds that Debtor's conduct entering into the Settlement Agreement to stop the foreclosure sale and then failing to make even a single payment under the agreement weighs in favor the Court granting relief from the stay for cause based on the Debtor's bad faith.

*Whether Debtor has been forthcoming with the Court and Creditors.*

Debtor failed to disclose he was holding the Hibel painting in Part 9 of his SOFA in the Third Case or in the original SOFA filed in this case. He checked the box signifying that he was not holding property for someone else and declared under penalty of perjury that his answers in the SOFAs were true and correct. The deficient disclosure came to light at the § 341(a) meeting of creditors in this case. Debtor's reasons for not making the disclosure in the SOFA are twofold. First, Debtor believed that an appeal of the New Jersey Judgment had been filed and that the New Jersey Judgment ordering him to return property to his mother was not valid. Second, Debtor wished to retain the property in safekeeping for his mother, and to keep it out of his cousins' possession.[24] These are not valid reasons. Debtor filed an amended SOFA disclosing that he was holding the Hibel painting and a coin collection as someone else's property only after the deficient disclosure came to light.

This conduct on the part of the Debtor supports a finding of bad faith. However, the weight given to this factor is mitigated by Debtor's amendment of the SOFA, the lack of prejudice to any party in interest, and because it did not involve the concealment of any of the Debtor's property.

---

[24] Debtor's mother and cousins are the Creditors.

*Debtor's treatment of creditors both before and after the petition was filed.*

Debtor testified that he is current on his mortgage. Debtor's unsecured non-priority debt was discharged in the Third Case, subject to excepting debt from the discharge in the Adversary Proceeding. Debtor testified that creditors, other than his ex-wife and Creditors, are being paid and payments are current. Apart from the circumstances involving the Settlement Agreement, this factor is neutral regarding the Court granting relief from the stay for cause based on the Debtor's bad faith.

*Whether Debtor's filing of this petition serves a bankruptcy purpose.*

At the final hearing on the Stay Motion, it was represented to the Court that the purpose of filing this Chapter 13 case, a common purpose of many Chapter 13 case filings, was to stop a foreclosure sale of Debtor's residence. It was further represented that Debtor's counsel intends to file a motion to avoid the Judicial Lien and to continue with the Adversary Proceeding so the Court will determine whether the New Jersey Judgment is dischargeable. The Court finds that filing this Chapter 13 case serves a bankruptcy purpose. This factor weighs against the Court granting relief from the stay for cause based on the Debtor's bad.

*The existence of special circumstances such as inordinate medical expenses*

No evidence has been put forth as to Debtor's medical expenses or whether those expenses played a role in his decision to file this case under Chapter 13. Debtor testified that he had inordinate legal expenses, but that debt does not appear in Debtor's schedules in either the Third Case, or this case. This factor is neutral.

3.    <u>Whether, under the Totality of the Circumstances, "Cause" for Relief from the Automatic Stay under § 362(d)(1) Exists Based on Debtor's Bad Faith</u>

The factors the Court has considered to determine whether to grant relief from the stay for cause produce mixed results regarding whether the Court should grant stay relief. The Court

- 18 -

has discretion to determine how much weight to give to each factor, within limits. Although it is a close call, on balance, the Court finds and concludes, under the totality of the circumstances, that cause does not exist to grant relief from the automatic stay to permit Creditors to foreclose the Judgment Lien at this time. The Court has concluded that whether stay relief should be granted for cause should await the outcome of the Adversary Proceeding.

    4.   <u>Whether under § 362(d)(4) the Filing of the Petition in this Case was Part of a Scheme to Delay, Hinder, or Defraud Creditors that Serves as a Basis to Grant Relief from the Automatic Stay</u>

Creditors also argue that the Stay Motion should be granted under § 362(d)(4) and that Debtor's petition in this case is part of a scheme to delay, hinder or defraud Creditors. Under § 362(d)(4):

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
> …
> (5) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
> > (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
> > (B) multiple bankruptcy filings affecting such real property[.][25]

In order to obtain relief from the automatic stay, under § 362(d)(4), Creditors must show: (1) that this case was filed as part of a scheme; (2) that the scheme intended to hinder, delay, or defraud the creditor; and (3) that the scheme involved either (i) a transfer of the property without

---

[25] § 362(d)(4).

prior approval from the court or creditor or (ii) multiple bankruptcy filings that affected the property.[26] Creditors bear the burden of proving all three elements.[27]

Creditors are parties in interest, whose claim against Debtor is secured by the Judgment Lien granted by the New Mexico Judgment. Debtor has filed two cases, the Third Case and this case, that involved his residence. Filing more than one case could constitute "multiple filings."[28] But even if the Third Case and this case are considered "multiple filings," Creditors must also show that Debtor's bankruptcy filings were part of a "scheme."

A "scheme" under § 362(d)(4) means a "systemic plan" or "artful plot" that evidences a debtor's "wrongful motive or intent."[29] Creditors argue that filing multiple bankruptcy cases, two on the eve of foreclosure sales, establishes, under § 362(d)(4)(B), that Debtor has engaged in a scheme.

Factors to consider when determining whether the debtor has engaged in a scheme to delay, hinder, or defraud a creditor by filing multiple bankruptcy cases, under § 362(d)(4)(B), include:

> (a) serial filings to stop a foreclosure; (b) the timing of the bankruptcy filings relative to each other, to proceedings in the foreclosure action, and to scheduled foreclosure sales; (c) lack of changed circumstances between bankruptcy filings; (d) failure to prosecute bankruptcy cases or to honor the obligations of a debtor in the bankruptcy cases, or other bad faith conduct in connection with the bankruptcy cases; (e) the inability to fund a plan; (f) multiple bankruptcy filings

---

[26] *In re Yellowman*, No. 23-10397 T13, 2023 WL 5658795, at *5 (Bankr. D.N.M. Aug. 31, 2023) (citing *In re McGrath,* 625 B.R. 774, 782 (Bankr. D.N.M. 2020)); *In re First Yorkshire Holdings, Inc.*, 470 B.R. 864, 870 (9th Cir. BAP 2012).

[27] *In re Yellowman,* 2023 WL 5658795, at *5 (citing *McGrath* 625 B.R. at 782); *see also In re Lee,* 467 B.R. 906, 920 (6th Cir. BAP 2012).

[28] *See In re Giambrone*, 600 B.R. 207, 213 (Bankr. E.D.N.Y. 2019) ("[R]elief under § 362(d)(4) may be warranted upon the filing of two bankruptcy cases affecting the same real property."); *In re Hymes*, No. A12-00599-GS, 2013 WL 653060, at *5 (Bankr. D. Alaska Feb. 20, 2013) (concluding that debtors' two cases filed four years apart and filed on the eve of scheduled foreclosure sales supported stay relief under § 362(d)(4) where debtors were evasive in their testimony regarding the purpose of their current filing).

[29] *Yellowman*, 2023 WL 5658795, at *5 (citing *In re Lovato*, No. 21-10144-j13, 2021 WL 3410462, at *6 (Bankr. D.N.M. Aug. 4, 2021); *In re Smith*, 395 B.R. 711, 719 (Bankr. D. Kan. 2008).

- 20 -

by multiple parties to protect common property; and (g) failure to make any mortgage payments for a long time.[30]

The Court will discuss each factor.

*Serial filings to stop a foreclosure*

Including this case, Debtor has filed four bankruptcy cases in twenty-four years. Debtor received discharges in his three previous cases and completed a Chapter 13 plan in the Second Case. The First Case and Second Case did not involve Debtor's residence or the New Jersey Judgment. The first two cases thus are not relevant in the Court's analysis regarding whether Debtor's serial filings are part of a scheme. The Third Case and this case were filed to stop a foreclosure sale of Debtor's residence.

*Lack of changed circumstances between bankruptcy filings*

The only change in circumstances between the filing of the Third Case and this case is that the Third Case was closed before Debtor had filed a motion to avoid the Judicial Lien, necessitating the filing of the Fourth Case to enable Debtor to file such a motion.

*Failure to prosecute bankruptcy cases or to honor the obligations of a debtor in the bankruptcy cases, or other bad faith conduct in connection with the bankruptcy cases*

The Court has already considered the issue of Debtor's bad faith in connection with this case and Third Case in evaluating whether "cause" exists to grant relief from the stay under § 362(d)(1).

*The timing of the bankruptcy filings relative to each other, to proceedings in the foreclosure action, and to scheduled foreclosure sales*

---

[30] *In re Jacobs*, No. 19-12591-j11, 2021 WL 2098921, at *9 (Bankr. D.N.M. May 24, 2021); *Lee*, 467 B.R. at 921 (discussion relating to factors (a), (b), (c) and (g)); *In re Lindsay*, No. 20-10339-JLG, 2021 WL 278317, at *7 (Bankr. S.D.N.Y. Jan. 27, 2021) (discussion relating to factors (a), (b) and (d)); *In re Montalvo*, 416 B.R. 381, 387 (Bankr. E.D.N.Y. 2009) (discussion relating to factors (a), (b), (d), and (g)); *In re Henderson*, 395 B.R 893, 901-02 (Bankr. D.S.C. 2008) (discussion relating to factors (a), (c), (e), and (f)).

- 21 -

The Third Case was filed shortly before a foreclosure sale was to take place, and this case was filed on the eve of a foreclosure sale. One purpose of both filings was to stop a foreclosure sale. The Third Case was closed on April 7, 2025, and this case was filed on May 27, 2025.

*The inability to fund a plan*

Debtor has income and is able to fund his Chapter 13 plan if the Judicial Lien is avoided.

*Multiple bankruptcy filings by multiple parties to protect common property*

Debtor is the only filer.

*Failure to make any mortgage payments for a long time*

Debtor is either in arrears one month, per his plan, or is current on his mortgage, per his testimony. Debtor does not have a long-term arrearage related to his mortgage. However, Debtor has never made a payment on the New Jersey Judgment or under the Settlement Agreement.

*The circumstances surrounding the filing of two bankruptcy cases affecting foreclosure of Creditors' Judgment Lien*

In this case, the Court regards the reason the Debtor filed the second bankruptcy case affecting foreclosure of Creditors' Judgment Lien (the Fourth Case) on the heels of the first bankruptcy case affecting foreclosure of Creditors' Judgment Lien (the Third Case) to be determinative of whether the filing of those two cases was part of a scheme to delay, hinder, or defraud Creditors that involved multiple bankruptcy filings affecting the Debtor's residence.

As discussed more fully above, in the Third Case, Debtor's counsel was waiting for the outcome of the Adversary Proceeding to decide whether to file a motion to avoid the Judgment Lien and had reason to believe that Debtor would have that opportunity. Debtor intended to move to avoid the Judgment Lien only if the Court determined that the judgment debt was dischargeable because if the Court decided otherwise Debtor would not obtain effective relief by avoiding the lien. In the circumstances, Debtor's counsel did not anticipate that the Court might

- 22 -

grant Debtor a discharge and close the Third Case prior to resolution of the Adversary Proceeding thereby depriving Debtor to the opportunity to file a motion to avoid the Judicial Lien in the Third Case in the event Debtor prevailed in the Adversary Proceeding. Debtor filed the Fourth Case to give Debtor an opportunity to file and prosecute a motion to avoid the Judgment Lien to protect Debtor in the event he prevails in the Adversary Proceeding. Under these circumstances, the Court concludes that Debtor's filing of the Third Case and Fourth Case was not part of a scheme to delay, hinder, or defraud Creditors.

**Conclusion**

After analyzing and weighing the factors relevant in the circumstances of this case, the Court concludes that cause does not exist to grant relief from the stay predicated on bad faith. The Court concludes further that relief from the stay should be denied under § 362(d)(4) because Creditors have not proven that the filing of the petition in this case was part of a scheme to delay, hinder, or defraud creditors that involves multiple bankruptcy filings by Debtor affecting real property securing Creditors' lien.

The Court will enter a separate order denying relief from the stay.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: March 12, 2026

COPY TO:

Attorney for Debtor
R. Trey Arvizu, III
715 E Idaho Ave, Ste 3f
Las Cruces, NM 88001

Attorneys for Creditors
Scott B. Cohen
Andrew O'Keefe
Engelman Berger, P.C
2800 North Central Avenue, Suite 1200
Phoenix, AZ 85004

Attorney for Creditors
Robert J. Muehlenweg
RMH Lawyers, PA
316 Osuna Rd NE, Ste 201
Albuquerque, NM 87107